CHRISTOPHER CHIOU
Acting United States Attorney
District of Nevada
Nevada Bar Number 14853
RANDOLPH J. ST. CLAIR
Assistant United States Attorney
RICHARD B. CASPER
Assistant United States Attorney
Nevada Bar Number 8980
400 South Virginia Street, Suite 900
Reno, Nevada 89501
Phone: 775-784-5438
Randy.StClair@usdoj.gov
Richard.Casper@usdoj.gov

*Representing the United States of America*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM PHILLIP NEIDINGER,<br>   aka "William Joseph Beck III,"<br><br>Defendant. | Case No. 3:20-CR-00009-HDM-CLB<br><br>**Government's Sentencing Memorandum** |

### I.   Introduction

On December 15, 2021, after a three-day jury trial, Defendant, William Phillip Neidinger, was found guilty of the charge False Statements in Application for a U.S. Passport, a violation of 18 U.S.C. § 1542, as charged in Count One of the superseding indictment. ECF No. 84.

The government agrees with Probation's recommendation of a 14-month sentence of incarceration for the reasons set forth herein.

## II. Factual background

This facts and evidence in this case were put before the Court and the jury during the trial starting on December 13, 2021, and ending on December 15, 2021. In summary, Defendant unlawfully used another person's information in a 2018 U.S. passport application to try to get a new passport after he was denied a passport renewal in his true name in 2017 due to owing a large amount of child support arrearage. As alleged in the superseding information, the false statements Defendant made on the 2018 U.S. passport application were the use of a Social Security number that was not his own, a date of birth that was not his date of birth, and a place of birth that was not Defendant's true place of birth. (Defendant was born in Cincinnati, Ohio, but he used Little Rock, Arkansas as his place of birth on the 2018 U.S. passport application.)

Finally, with some very minor exceptions that can be addressed at sentencing, the government agrees with the facts as presented in the Presentence Investigation Report ("PSR").

## III. Discussion

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment." *United States v. Carry*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). The Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed

on other similarly situated defendants, and the need for victim restitution. 18 U.S.C. § 3553(a). The defendant's conduct warrants a guideline sentence to further these goals.

  a. **The Sentencing Guideline Range**

The government agrees with Pretrial Services guideline calculation of 10. Defendant's base offense level is 8. USSG §2L2.2(a). For different reasons other than those noted by probation, there should also be an adjustment for Obstruction of Justice.

  **1. Mr. Neidinger Obstructed Justice by Evading and/or Refusing to Answer Questions During the Cross-Examination Portion of His Testimony.**

Defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the prosecution of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct; or a closely related offense; therefore, two levels should be added. USSG § 3C1.1.

The government's reasoning for the additional two levels for obstruction are different than the reasons iterated in the PSR. The government position is that the basis for an obstruction enhancement is related to Defendant's behavior and statements made while he was testifying at trial, specifically, some of the statements and answers by Defendant during cross-examination by the government. After being fully advised of his right to remain silent, and after being advised by the Court of what waiving that right would mean, in particular, that he would be subject to cross-examination by the government if he chose to testify in his own defense, Defendant chose to be non-responsive, evasive, and/or refused to answer questions properly posed by the government during cross-examination. This occurred in some cases even after being specifically directed by the Court to answer certain questions. *See generally*, December 14, 2021, Transcript of Trial Testimony of Defendant Neidinger ("Transcript") pp. 61-70.

Some relevant examples taken from the Transcript of Defendant's cross-examination are below.

**Testimony related to Exhibit 11, Defendant's birth certificate—Questions by Mr. St. Clair:**

Q: Okay. So it has your name on it, correct, William Phillip Neidinger?

A: Same answer.

Q: That's your name?

A: Under those circumstances, yes.

Q: And date of birth July 15, 1961. Yes or no.

A: Same answer.

Q: But this is your birth certificate.

A: Same answer.

Q And were your parents -- was one of your parents' maiden name Phyllis Hilda Stoltenberg that is now Ms. Phyllis Hilda Neidinger after she was married? Is that your mother?

A Yep, under -- the same answer as before.

THE COURT: The question is, is that your mother.

THE WITNESS: Same answer as before.

Transcript at pp. 61-62.

**Testimony Related to Defendant's Use of Another Person's date of birth—Questions by Mr. St. Clair:**

Q: You knew it was another person's date of birth, correct?

A: Same answer.

4

Q: And you knew it was another person's --

THE COURT: You can answer that one yes or no. Did you know that that was somebody else's identity and place of birth and --

THE WITNESS: It's not that simple. If it was --

THE COURT: Well, are you refusing to answer the question?

THE WITNESS: I am refusing to give more of an answer.

*Id.* at pp. 63-64.

**Testimony Related to Defendant's same-day use of California and Nevada EBT cards, under the Beck identity and his true name, respectively—Questions by Mr. St. Clair after Defendant's objection was overruled:**

THE COURT: The objection is overruled. He did refer to these benefits, and he also referred to securing foods and things to sustain himself. So it's proper cross-examination. You may go ahead, and I'm directing you to answer the questions.

THE WITNESS: I refuse to answer transaction by transaction.

*Id.* at pp. 69.

After the Court indicated that Defendant's refusal to answer in the above instance would be addressed outside the presence of the jury, the government again asked Defendant a question about his use of the EBT cards but with more specifics:

BY MR. ST. CLAIR:

Q: So I want to be clear that you're saying you don't want to answer the question that is you, on May -- on specifically May 30th of 2018, you swiped, first of all, your -- one of your

>  benefits cards under the Beck name at the Whole Foods, and it
>  didn't work, correct? Yes or no.
>
>  A: If I was going to answer that, I'd say I can't remember, but I'm not answering it.

*Id.*

This line of questioning briefly continued with Defendant answering the same thing; that if he was going to answer, he'd say he can't remember, and then saying, "but I'm not answering it." *Id.* at p. 70.

These were some of the more egregious examples of Defendant's attitude and refusal to submit to cross-examination. After the Court allowed Defendant a great deal of leeway in his narrative and direct testimony to the jury—he decided he did not want to answer specific questions on cross-examination that were within the scope of his direct testimony, even when directed to do so by the Court. Defendant refused to comply with the Court's orders and directions regarding how cross-examination would proceed. Defendant was well-advised by the Court regarding his rights to remain silent and the rights he was waiving if he did choose to testify—one of which was that he would be subject to cross-examination by the government.

Defendant's evasion and refusal to answer questions after being directed to do so by the Court is similar to trials where a co-conspirator has been granted immunity, is fully advised as to what that means, and is ordered by the court to testify and then refuses to testify. Such a refusal constitutes obstruction of justice under USSG § 3C.1. *United States v. Morales*, 977 F.2d 1330, 1331 (9th Cir. 1992).

In *Morales*, the defendant pled guilty to conspiracy to distribute and possession with intent to distribute cocaine, but he refused to testify in the trial of his co-conspirators after

he was granted testimonial immunity and *ordered to testify by the district court*. *Id*. (emphasis added) "Morales' refusal to testify constituted a willful obstruction of, or at least an attempt to obstruct, the administration of justice during the prosecution of [his co-conspirators]." *Id*.; *see also United States v. Acuna*, 9 F.3d 1442, 1446 (9th Cir. 1993) (The obstruction enhancement applies "when a defendant attempts to obstruct justice in a case closely related to his own, such as that of a codefendant."). In the present case, Defendant didn't just attempt to obstruct in a case "closely related to his own" but in his own case. Defendant received the benefit of telling his side of the story to the jury, in mostly narrative form, and then when the government tried to test Defendant's testimony with impeachment evidence, he chose the path of evasion and refusal even after admonishment by the Court. In essence, if Defendant heard a question from the government that didn't fit his version of events, he became evasive and/or nonresponsive, or would just refuse to answer. This behavior at trial was a clear attempt by Defendant to obstruct the administration of justice—an improper effort to make sure the jury only heard his version of events without a proper test of an unhindered cross-examination by the government. For all of the above reasons, a two-level increase for obstruction should be applied.

The government agrees with the probation that Defendant's criminal history category is III and his guideline range is 10 to 16 months.

  **b. Section 3553(a) Factors**

The section 3553(a) factors support a 14-month sentence of incarceration. This sentence would provide just punishment for the crime committed, deter the defendant and others from similar criminal conduct, and protect the public. Anything below a guideline sentence would not adequately reflect the seriousness of this offense.

Defendant has remained unrepentant and does not seem to believe that what he did was inherently wrong. He has shown no empathy for the consequences that his actions might have regarding Mr. Beck's future ability to get his own legal U.S. passport renewed. Based on Defendant's recent pleadings, his Petition for Travel for Family Need (ECF No. 127) and his Sentencing Memorandum (ECF No. 129), it is apparent that he sees nothing wrong with his actions and behavior that led to his indictment and his ultimate conviction in this case—in fact, Defendant is still blaming others for the choices he made and the problems he created for himself.

Furthermore, it is in the national security interest of the Unites States to jealously guard against fraud related to the issuance of U.S. passports. As was stated by one of the government's witnesses from Consular Affairs, Fraud Program Manager, Myrna Gutierrez, the U.S. passport is the "gold standard" of identification because of the United States' reputation in the world, and the fact that a U.S. passport confirms identification and U.S. Citizenship upon the bearer of a valid U.S. passport. A guideline sentence of 14 months is necessary to deter this conduct and protect the public.

Finally, Defendant now has California and Nevada cases pending in state and municipal courts. While the charges alleged in those cases are not based on behavior that occurred while he was on pretrial release in the present case, these are cases related to the alleged frauds he committed that were part and parcel to this case. Defendant so far has not been held to account and even with his pending state charges, he has given no indication that he intends to change his behavior for the better. He blames the government for his recent conviction and blames others in general for his past problems and his child support debt. But it is Defendant's own actions and choices that have caused his problems—nonetheless, he seems to still believe everything that has happened to him is the

fault of others. A guideline sentence is appropriate based upon the facts of this case, Defendant's history, and his seeming inability to take responsibility for his own actions.

### IV.   Supervised Release

The government agrees with Probation's recommendation for three years of supervised release as well as the special conditions recommended for supervised release. The search and seizure under reasonable suspicion condition is justified by the defendant's actions and the facts of this case. Without this search condition, the defendant will have greater opportunity to anticipate searches and conceal criminality, which would directly undermine the goals of deterrence and protection of the public. 18 U.S.C. §§ 3583(d)(1), 3553(a).

### V.   Conclusion

Based on the foregoing, the government respectfully requests the Court impose a 14-month sentence of imprisonment. Based on the totality of circumstances, this sentence is sufficient but not greater than necessary to comply with the §3553 factors.

DATED: April 14, 2022.

Respectfully submitted,

CHRISTOPHER CHIOU
Acting United States Attorney

*/s/ Randolph J. St. Clair*
RANDOLPH J. ST. CLAIR
Assistant United States Attorney